IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ADAM JOYNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01089-STA-jay |
| | ) |
| THOMAS J. VILSACK, in his official | ) |
| capacity as Secretary of Agriculture, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO STAY**

Before the Court is Defendants' Motion to Stay Proceedings Pending Resolution of Related Class Action filed on July 16, 2021. (ECF No. 12.) Defendants seek to stay proceedings in this case in light of the certification of classes in the Northern District of Texas that, Defendants argue, include the Plaintiff in this case. Plaintiff has responded in opposition. (ECF No. 14.) Also before the Court is Defendants' Reply to Plaintiff's Response. (ECF No. 18.) For the following reasons, Defendants' Motion is **GRANTED**.

**BACKGROUND**

Plaintiff is a self-described non-minority "small farmer" specializing in growing corn and beans, who lives and works in Gibson, County, Tennessee, which is located in the Western District of Tennessee. On June 15, 2021, Plaintiff filed the Complaint in this case, alleging that the U.S. Department of Agriculture's ("USDA") implementation of Section 1005 of the American Rescue Plan Act of 2021 ("ARPA") is violative of the Fifth Amendment's Equal Protection Clause under

1

the United States Constitution. Section 1005 of ARPA, the Farm Loan Assistance Program for Socially Disadvantaged Farmers and Ranchers, appropriates funds to "provide a payment in an amount up to 120 percent of outstanding indebtedness" of USDA farm loans held by "socially disadvantaged" famers or ranchers. Pub. L. No. 117-2, § 1005 (2021). The USDA interprets the phrase "socially disadvantaged" to mean the racial classifications of "Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander." See American Rescue Plan Debt Payments FAQ, Question 1, https://www.farmers.gov/americanrescueplan/arp-faq. Because Plaintiff does not fall under the definition of a "socially disadvantaged" farmer based on his race, he is ineligible for debt relief under Section 1005, notwithstanding his substantial outstanding farm debt. Challenges to Section 1005 are pending in several courts across the country. In a distinct case also challenging the constitutionality of ARPA's Section 1005, *Holman v. Vilsack*, 1:21-cv-1085, this Court has granted a request for a preliminary injunction and imposed a nationwide injunction on the disbursement of Section 1005 funds pending a resolution in the case.

In their Motion to Stay, Defendants indicate that a related class action, *Miller v. Vilsack*, 4:21-cv-595, is pending in the Northern District of Texas. The court in that case has certified a class under Federal Rule of Civil Procedure 23(b)(2) and also enjoined Defendants from administering Section 1005's loan program. Defendants argue that the instant case should be stayed pending the resolution of the *Miller* case because Plaintiff is a mandatory member of the class certified in *Miller* and Defendant will be bound by any relief granted to the class with respect to Plaintiff should the class prevail on their equal protection claim. Therefore, because the claims being litigated in this case and in *Miller* are identical and are dispositive for this case, Defendants argue that a stay is necessary to preserve judicial resources and prevent duplicative litigation.

Plaintiff opposes a stay, arguing that Plaintiff would be prejudiced by submitting to the result in a case over which he can exercise no control over the legal strategies employed. Plaintiff additionally argues that he will be substantially burdened by having to wait for the resolution of the Texas class action and that the *Miller* litigation is not duplicative in that the *Miller* plaintiffs request relief that is contrary to that in Plaintiff's Complaint.

## **STANDARD OF REVIEW**

"A district court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, "it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). When determining whether to grant a stay, courts may consider multiple factors. The most important consideration is the balance of hardships; the moving party has the burden of proving that the non-moving party will not be injured by a stay. *Int'l Bhd. of Elec. Workers, Loc. Union No. 2020, AFL-CIO v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (6th Cir. 1989) (Table) (quoting *Landis*, 299 U.S. 248, 255.) Also relevant is whether granting a stay will further the interest of judicial efficiency, particularly whether a "separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay." *Id*. "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council,* 565 F.2d 393, 396.

## ANALYSIS

In considering the balance of hardships, the Court finds that Defendants have met their burden of showing that neither the Plaintiff nor the public will suffer harm from the proposed stay. Plaintiff argues that he was not consulted on the approach in the Texas case and that he will be prejudiced by potentially being inadequately represented by the plaintiffs' attorneys in *Miller*. Further, Plaintiff asserts that he "owes hundreds of thousands of dollars in federal loans – for which more payments are due, and more and more interest is charged as time goes on" – therefore, asking him to wait in uncertainty for a resolution in the *Miller* case will be extremely burdensome for him. These arguments are unavailing considering, first, that this Court and others have imposed a preliminary injunction to preserve the status quo for Plaintiff and, second, because Plaintiff would be bound by the decision in *Miller*, regardless of the result in the instant case.

The Court notes that it has issued a preliminary injunction enjoining the distribution of Section 1005 funds in *Holman v. Vilsack*[1], which was filed in this Court prior to the instant case and is litigating an identical issue. That case is further along than the instant case, a Scheduling Conference having been set for September 2, 2021. Therefore, even in the absence of the *Miller* case, Plaintiff's status with regard to Section 1005 litigation will be preserved pending the resolution of another case, *Holman*. Further, as Plaintiff notes in his Response, Plaintiff is not requesting that the definition of "socially disadvantaged farmer" be extended to encompass him. Rather, in his "Prayer for Relief" Plaintiff requests that the Court enjoin Defendants from implementing Section 1005 on the basis of race. Even if Plaintiff had requested that the Court fashion a "non-discriminatory" basis for implementing Section 1005, which it did not, the Court would not be inclined to re-write an act of Congress. Thus, Plaintiff would still owe hundreds of

---

[1] *Holman* is distinguishable from the present action because Plaintiff in that case raised an additional claim concerning the meaning of "debt forgiveness," which is not raised in *Miller* or the instant case.

thousands of interest-accumulating USDA loans should the case be resolved in his favor according to the relief he requested, undercutting Plaintiff's argument that he is burdened by the time necessary to resolve this case because of financial uncertainty. Additionally, while the Court appreciates that Plaintiff has an interest in controlling the pace of the litigation and the legal theories employed, that ability would be curtailed to some extent in this Court notwithstanding the Texas class action because of the ongoing litigation in *Holman*. Also, the Court credits the *Miller* court's finding that counsel for that class action "will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief." (ECF No. 12-1 at 12.) Plaintiff would also not be voiceless as a class member in *Miller*, as Defendants state, mechanisms such as intervention are available to him should he wish to raise any concerns in the Texas litigation. The fact that this case is still in a very early stage, especially relative to *Miller*, the sole upcoming deadline being Defendants' August 30 deadline to respond to Plaintiff's Complaint, also mitigates in favor of finding that Plaintiff would not be greatly prejudiced by a stay. On balance therefore, Plaintiff will be minimally prejudiced by a stay whereas Defendants will be significantly prejudiced by having to litigate identical cases in two different courts.

Not only will Defendants be prejudiced by litigating identical claims in two separate courts, but the judicial system itself will be harmed by the inefficiencies arising from such. Plaintiff disagrees, arguing that a stay would not serve the interests of judicial economy because the *Miller* litigation is not duplicative of the present action. Plaintiff incorrectly states that the class action in *Miller* requests that the court extend the definition of "socially disadvantaged" to encompass white ethnic groups that have suffered past prejudice and discrimination. This ignores the language of the *Miller* court's certification order which clearly establishes classes only as to the challenge to the validity of Section 1005 on Equal Protection grounds, excluding all other claims, among them

5

the request to extend the definition of "socially disadvantaged." (ECF No. 12-1 at 6) Plaintiff does not dispute that he is a member of the classes which include "all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act" and "all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6)5 and as interpreted by the Department of Agriculture." (ECF No. 12-1 at 5-6.) Plaintiff also allows that the *Miller* litigation was the first-filed case and under the first-filed rule, when two federal courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority over the case. *See Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.,* No. 00–3183, 2001 WL 897452, *3 (6th Cir. July 31, 2001) ("The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank.") Most compellingly, Plaintiff is bound by the class certification in *Miller*, which was certified under Rule 23(b)(2). The Supreme Court has instructed that classes certified under Rule 23(b)(2) are mandatory, providing "no opportunity" for class members to opt out and not even requiring district courts to afford class members notice of the certification. *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 361-62 (2011). Accordingly, Plaintiff will not be deprived of "his day in court" as he asserts, because he is a member of a mandatory class action litigating the same claim he brings in this Court. Given Plaintiff's inability to opt out of the *Miller* class action, the identical nature of the class action claim, and the fact that *Miller* was filed first and is substantially more developed than this case, it is an inefficient use of judicial resources to continue litigation in this Court while the *Miller* case is ongoing. Judicial efficiency mitigates in favor of a stay pending resolution of *Miller*.

6

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have met their burden to warrant a stay in this case pending the resolution of the class challenge to the validity of Section 1005 in *Miller v. Vilsack*, 4:21-cv-595. Accordingly, Defendants' Motion to Stay Proceedings Pending Resolution of Related Class Action (ECF No. 12) is **GRANTED**. Plaintiff may move to lift the stay for good cause should Plaintiff seek and be permitted to opt-out of the classes in *Miller* or if the *Miller* court takes action to decertify the classes of which Plaintiff is a member.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 19, 2021.